USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 10/27/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LUCIANA MELO,

Plaintiff,

-against-

25-cv-3813 (LAK)

METROPOLITAN LIFE INSURANCE COMPANY AND GOOGLE LLC,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION GRANTING MOTION FOR SUMMARY JUDGMENT**

Appearances:

Luciana Melo

*Pro Se Plaintiff*

Matthew Paul Mazzola
ROBINSON & COLE LLP

*Attorney for Defendant Metropolitan Life Insurance Company*

Jared Robin Killeen
MORGAN, LEWIS & BOCKIUS LLP

*Attorney for Defendant Google LLC*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Luciana Melo is a former employee of Defendant Google LLC, which has an employee welfare benefit plan (the "Plan") that is administered by Defendant Metropolitan Life Insurance Company ("MetLife"). Plaintiff's last day at work was January 3, 2023.[1] She stopped

---

[1] Compl. (Dkt1) ¶ 12.

working after that date due to a disability, and she subsequently was awarded long-term disability benefits under the Plan. In this lawsuit, brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), plaintiff challenges aspects of how her monthly benefit was calculated. Defendants jointly move for summary judgment based on the administrative record. The motion will be granted.

First, plaintiff alleges that defendants improperly calculated her predisability earnings, which were used to determine the size of her monthly benefit. Under the Plan, plaintiff was eligible to receive a monthly benefit comprising 65 percent of her "Predisability Earnings."[2] A non-exempt employee's "Predisability Earnings" are based on the employee's "annualized hourly rate as of [the employee's] last day of Active Work before . . . Disability."[3] An employee is "Actively at Work" when the employee is "performing all of the usual and customary duties of [the employee's] job on the [employer's] regular work schedule."[4] The Plan defines "Predisability Earnings" to *exclude* tips, awards, bonuses, overtime pay, the granting of stock options, the employer's contributions to a deferred compensation plan or pension plan, and "any other compensation from the [employer]."[5]

---

2 Dkt 59-1 at 25-26. All citations to page numbers in this opinion refer to the page number listed on the ECF header.

3 *Id.* at 28.

4 *Id.* at 27.

5 *Id.* at 28-29.

As noted above, plaintiff's last day of work was January 3, 2023.[6] As of that day, plaintiff was a non-exempt worker compensated at an annualized hourly rate of $44.83, which works out to $7,770.53 per month.[7] Sixty-five percent of $7,770.53 is $5,050.84. Plaintiff was awarded a monthly benefit of $5,050.84.[8]

Plaintiff contends that her monthly benefit instead should have been calculated based on her "total gross earnings for 2022," which were $116,999.26.[9] Plaintiff's theory is that MetLife simply should have divided her gross 2022 pay by twelve to determine her monthly predisability earnings.[10] The 2022 pay records upon which plaintiff relies, however, plainly includes categories of compensation – such as overtime and bonus pay – that expressly are excluded from the calculation of predisability earnings.[11] Morever, plaintiff herself alleges that her last day working for Google was January 3, 2023, making January 3 – not any date in 2022 – the relevant starting point. And even assuming that plaintiff's last day of active work were sometime in 2022, plaintiff's pay records would not support a finding that her annualized hourly rate was higher in 2022 than it

---

6 Compl. ¶ 12; *see also* Dkt 59-1 at 165, 173-74, 942.

7 Dkt 59-1 at 208, 466, 942-43; Dkt 59-76 at 42.

8 Dkt 59-78 at 6.

9 Compl. ¶¶ 21.

10 *Id.* ¶ 22; Dkt 59-92 at 23.

11 Dkt 59-92 at 26.

was on January 3, 2023.[12] In sum, the record does not support a finding that MetLife miscalculated her predisability earnings.

Second, plaintiff alleges that her monthly benefit was reduced by an improper amount after she returned to work. Under the Plan, as relevant here, the employee's monthly benefit will not be reduced if the employee returns to work "except to the extent" that the monthly benefit plus the amount the employee "earn[s] from working" "exceeds 100% of [the employee's] Predisability Earnings as calculated in the definition of Disability."[13]

Plaintiff began working for the New York City Department of Education in September 2024.[14] Based on employment records and pay stubs submitted by plaintiff, MetLife determined that plaintiff earned $3,779.36 in September 2024 and $5,399.08 in October 2024.[15] Thus, the combination of her disability benefit ($5,050.84) and work earnings exceeded her $7,770.53 predisability earnings by $1,059.67 in September and by $2,679.39 in October. MetLife therefore informed plaintiff that she was overpaid by a $3,739.06, combined, for those months.[16]

---

12 *Id.* (showing plaintiff was paid $61,952.87 for 1,384.23 hours of work as "Regular Pay" in 2022, which works out to roughly $44.76 per hour); Dkt 42-1 at 6 (listing plaintiff's hourly rate as of December 2022 as $44.83 per hour).

13 Dkt 59-1 at 41.

14 Dkt 59-88 at 13.

15 Dkt 59-91 at 9.

16 *Id.* at 9-10.

Plaintiff's complaint argues that "it is inaccurate to attribute a full month of earnings to the 'excess earnings' calculation" because she began work on September 17, 2024.[17] The plain text of the Plan reveals no basis for such an argument. Plaintiff's monthly benefit was reduced by the amount MetLife determined that she actually earned from working in September 2024. Whether she began work on September 1 or September 30 is irrelevant to the question of whether her monthly benefit and "the amount [she] earn[ed] from working" that month "exceed[ed] 100% of [her] Predisability Earnings."[18]

For the foregoing reasons, the complaint's theories of miscalculation are belied by the record. Plaintiff's opposition to the motion for summary judgment fails otherwise to articulate any bases for holding that plaintiff's benefits were calculated improperly.[19] There is no genuine dispute of material fact.

---

17 Compl. ¶ 26.

18 Dkt 54-1 at 41.

19 The complaint alleges that plaintiff's health insurance arbitrarily was cancelled. Compl. ¶28. In her opposition to summary judgment, however, plaintiff abandons this claim to the extent that it could be read to assert a "separate . . . cause[] of action." Dkt 62 at 9. Instead, plaintiff argues that the facts related to her insurance cancellation provide context to her claim that MetLife engages in inconsistent benefits administration. No such context could possibly rehabilitate plaintiff's claims related the calculation of her disability benefits, which are refuted by basic math and the plain text of the Plan.

### *Conclusion*

For the foregoing reasons, defendants' joint motion for summary judgment (Dkt 50) is GRANTED. The complaint (Dkt 1) is dismissed with prejudice. The Clerk respectfully is directed to enter judgment and close the case.

SO ORDERED.

Dated: October 27, 2026

Lewis A. Kaplan
United States District Judge